Steven R. ARCH, et al.

v.

The AMERICAN TOBACCO COMPANY, INC., et al.

No. CIV. A. 96–5903.

United States District Court, E.D. Pennsylvania.

June 17, 1997.

Stephen A. Sheller, Sherrice A. Knisely, Sheller, Ludwig, & Badey, Philadelphia, PA, Thomas E. Mellon, Jr., Mellon, Webster & Mellon, Doylestown, PA, Arnold Levin, Jonathan Shub, Levin, Fishbein, Sedran & Berman, Philadelphia, PA, Julia W. Mc Inerny, Coale and Van Susteren, Washington, DC, Gary Robert Fine, Rodham and Fine, P.A., Fort Lauderdale, FL, Dianne M. Nast, Roda and Nast, P.C., Lancaster, PA, for Plaintiffs.

Edward F. Mannino, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, PA, Peter S. Greenberg, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for American Tobacco Co., Inc., Brown & Williamson Tobacco Corp.

Edward F. Mannino, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, PA, for American Brands, Inc.

Hugh R. Whiting, Jones, Day, Reavis & Pogue, Cleveland, OH, Morton F. Daller, Tracy Canuso Nugent, Daller, Greenberg and Deitrich, Fort Washington, PA, for R.J. Reynolds Tobacco Co.

Morton F. Daller, Tracy Canuso Nugent, Daller, Greenberg and Deitrich, Fort Washington, PA, for RJR Nabisco, Inc.

Peter S. Greenberg, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for Batus, Inc., Batus Holdings, Inc.

Judy L. Leone, Dechert, Price & Rhoads, Philadelphia, PA, Thomas Finarelli, Lavin, Coleman, O'Neil, Ricci, Finarelli & Gray, Philadelphia, PA, for B.A.T. Industries, P.L.C.

Judy L. Leone, Robert C. Heim, Christine C. Levin, Ronni Ellen Fuchs, Dechert, Price & Rhoads, Philadelphia, PA, Philip Morris, Inc.

Judy L. Leone, Robert C. Heim, Christine C. Levin, Dechert, Price & Rhoads, Philadelphia, PA, for Philip Morris Companies, Inc.

Howard M. Klein, William J. O'Brien, Conrad, O'Brien, Gellman & Rohn, P.C., Philadelphia, PA, for Lorillard Tobacco Co., Inc., Lorillard, Inc., Tobacco Institute, Inc.

William J. O'Brien, Conrad, O'Brien, Gellman & Rohn, P.C., Philadelphia, PA, for Loews Corp.

Judy L. Leone, Dechert, Price & Rhoads, Philadelphia, PA, Madeline M. Sherry, Stephen J. Imbriglia, Hecker, Brown, Sherry and Johnson, Philadelphia, PA, UST, Inc.

Joseph W. Fullem, Jr., Patrick W. Kittredge, Gary M. Marek, Kittredge, Donley, Elson, Fullem & Embick, Philadelphia, PA, for Counsil for Tobacco Research–U.S.A., Inc.

J. Kurt Straub, Abrahams, Lowenstein, Bushman & Kauffman, Philadelphia, PA, for Liggett Group, Inc., Liggett & Myers, Inc., Brooke Group, Ltd.

Matthew L. Myers, Nat. Ctr. for Tobacco Free Kids, Washington, DC, for American Heart Assoc., American Cancer Society, American Lung Assoc.

## MEMORANDUM

NEWCOMER, District Judge.

Presently before this Court are Motion of Defendant B.A.T. Industries p.l.c. to Dismiss the First Amended Complaint for Lack of Personal Jurisdiction, and plaintiffs' response thereto, and defendant's reply thereto. For the following reasons, the Court grants defendant's motion. Also before this Court are Motion to Quash and for Entry of a Protective Order of Defendant B.A.T. Industries p.l.c., and plaintiffs' response thereto, and defendant's reply thereto. For the following reasons, the Court denies defendant's motion as moot. Also before this Court is the Motion of Plaintiffs to Add British American Tobacco Company as a Defendant. For the following reasons, the Court grants plaintiffs' motion.

### I. Introduction

On August 27, 1996, this action was removed from state court. On December 2, 1996, plaintiffs [1] filed a "First Amended Complaint—Class Action." B.A.T. Industries p.l.c. ("BAT") was one of the defendants named in the complaint, along with a few of

1. The plaintiffs are Steven R. Arch, William Barnes, Ciaran McNally, Catherine Potts, Norma Rodweller, Barbara Slazman, Edward J. Slivak and John Teagle. By letter of January 16, 1997, plaintiffs' counsel notified defendants that they were withdrawing Mr. Teagle as a named plaintiff in this action.

2. The other defendants named in the First Amended Complaint are The American Tobacco Company, Inc., American Brands, Inc., R.J. Reynolds Tobacco Company, RJR Nabisco, Inc., Philip Morris, Inc., Philip Morris Companies, Inc., Lorillard Tobacco Company, Inc., Lorillard, Inc., Loews Corporation, United States Tobacco Company, UST, Inc., The Tobacco Institute, Inc., The Council for Tobacco Research–U.S.A., Inc., Liggett Group, Inc., Liggett & Myers, Inc. and Brooke Group, Ltd.

BAT's subsidiaries, namely Brown & Williamson Tobacco Corporation ("B & W"), Batus, Inc. ("Batus") and Batus Holdings, Inc. ("Batus Holdings") [2] On January 29, 1997, BAT filed a motion to dismiss plaintiffs' first amended complaint for lack of personal jurisdiction. By Order entered February 12, 1997, the Court dismissed BAT's motion without prejudice to BAT refiling such a motion after the Court disposes of plaintiffs' motion for class certification. [3]

On March 28, 1997, BAT filed a motion to quash and for entry of a protective order in response to discovery requests served on it by plaintiffs. On May 1, 1997, plaintiffs filed a combined memorandum which contained (1) a response to BAT's motion to dismiss for lack of personal jurisdiction,[4] (2) a response to BAT's motion to quash discovery and for entry of a protective order, and (3) a motion to add British American Tobacco Company ("BATCo") as a party defendant. On May 23, 1997, BAT filed a reply to plaintiffs' response to BAT's motion to dismiss and motion to quash discovery and for entry of a protective order. In its reply, counsel for BAT stated that it does not represent BATCo at the present time, and thus they are not in a position to oppose plaintiffs' motion on behalf of BATCo.

In its motion to dismiss, BAT argues that the Court lacks personal jurisdiction over it. BAT specifically contends that plaintiffs' allegations in the first amended complaint are jurisdictionally deficient as a matter of law because they fail to establish that BAT has

3. On June 3, 1997, this Court denied plaintiffs' motion for class certification.

4. Foreshadowing a decision on class certification, plaintiffs filed a response to BAT's motion to dismiss, which had been previously dismissed without prejudice to BAT filing such a motion after the Court's disposition of the motion for class certification. Technically, plaintiffs thus filed a response to a motion which was not pending. For the sake of judicial efficiency, the Court vacates its prior Order of February 10, 1997, which dismissed BAT's motion to dismiss. Thus, the issue as to whether this Court has personal jurisdiction over BAT is ripe for adjudication.

any connection with the Commonwealth of Pennsylvania. BAT adds that any attempt by this Court to exercise personal jurisdiction over it would violate firmly established principles of constitutional due process. BAT asserts that "all notions of fair play and substantial justice" would be violated if this Court exercised personal jurisdiction over it.

In response, plaintiffs argue that BAT's motion to dismiss is "truly without basis." In sum, plaintiffs argue that (1) BAT itself has engaged in tortious activity sufficient to justify the exercise of specific jurisdiction pursuant to Pennsylvania's long-arm statute; (2) the actions of BAT's tobacco subsidiary, defendant B & W, should be imputed to BAT; and (3) BAT is the legal successor to BATCo. Based on these reasons, plaintiffs argue that the Court can properly exercise personal jurisdiction over BAT.

In its motion to quash and for the entry of a protective order,[5] BAT argues that "plaintiffs' attempt to take discovery from it is at odds with settled principles of judicial administration and fairness that require a plaintiff to plead specific facts demonstrating a basis for jurisdiction before being entitled to subject an overseas defendant to discovery, particularly the full-blown merits discovery plaintiffs seek here." In response, plaintiffs contend that, at a minimum, they should be entitled to conduct discovery into jurisdictional facts before the Court dismisses plaintiffs' amended complaint against BAT for lack of personal jurisdiction.

Pursuant to Rule 21 of the Federal Rules of Civil Procedure, plaintiffs move to add BATCo as a party defendant. Plaintiffs argue that research has demonstrated that BATCo is involved in the wrongful actions alleged in plaintiffs' first amended complaint. No response has been filed to plaintiffs' motion. The Court will address the issues raised by the present motions *seriatim.*

## II. Discussion

### A. Personal Jurisdiction

Once a defendant raises a personal jurisdiction defense, the plaintiff bears the burden of coming forward with a set of facts sufficient to create a *prima facie* case of jurisdiction. *Mellon Bank (EAST) PSFS v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992); *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir.1987). A plaintiff's jurisdictional allegations must be supported with appropriate affidavits, documents or other competent evidence, because a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 67 n. 9 (3d Cir.1984).

A federal district court is permitted to exercise "personal jurisdiction over a non-resident of the state in which the court sits to the extent authorized by the law of the state." *Provident,* 819 F.2d at 436 (citing Fed.R.Civ.P. 4(e)). Under Pennsylvania's long-arm statute, there exists two distinct bases for finding that a defendant is subject to personal jurisdiction—general jurisdiction and specific jurisdiction. "General jurisdiction exists when the non-resident is deemed 'present' in the state by virtue of its voluntary action, such as maintaining continuous and substantial forum contacts, consenting to jurisdiction, or being domiciled in the state." *Brooks v. Bacardi Rum Corp.,* 943 F.Supp. 559, 561 (E.D.Pa.1996).

Specific jurisdiction exists if the cause of action arises through any one of the following contacts with the state: (1) transacting business in Pennsylvania, (2) contracting to supply services or things in the Commonwealth, (3) causing harm or tortious injury by an act or omission in Pennsylvania, (4) causing harm or tortious injury by an act or omission outside the state, (5) having an interest in or using or possessing real property in the state, (6) engaging in the insurance business in the state, (7) accepting an election or appointment in the state, (8) executing a bond, (9) making an application to a governmental unit for any certification, license or similar instrument, or (10) committing a vio-

---

5. Specifically, BAT asks the Court to (1) quash plaintiffs' Notice of Depositions to All Defendants, Set I, (2) order that BAT need not respond to Plaintiffs' Request for Production of Documents, Set II, and (3) direct that BAT need not respond to any further discovery requests until resolution of its motion to dismiss for lack of personal jurisdiction.

lation within the state of any law or court order. 42 Pa. Cons.Stat. Ann. § 5322(a)(1)–(10).

The United States Supreme Court and the Pennsylvania Supreme Court have recognized that "the analysis of whether a state may exercise jurisdiction over a nonresident individual must be tested against both statutory and constitutional standards." *Kenny v. Alexson Equip. Co.*, 495 Pa. 107, 432 A.2d 974, 980 (1981) (citing *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)). Under Pennsylvania law, however, a court may exercise personal jurisdiction to the fullest extent allowed by the United States Constitution. 42 Pa. Cons.Stat. Ann. §§ 5308, 5322(b). Because there is a conflation of the statutory and constitutional inquiries, Pennsylvania jurisdictional law requires only a single step analysis, *i.e.*, whether the court's assertion of jurisdiction complies with the constitutional requirement of due process as articulated in the personal jurisdiction context. *See Clark v. Matsushita Elec. Indus. Co.*, 811 F.Supp. 1061, 1064 (M.D.Pa.1993).

The Supreme Court has held that jurisdiction is proper when a defendant purposefully establishes "minimum contacts" in the forum state, by deliberately engaging in significant activities or by creating continuing obligations such that he has "availed himself of the privilege of conducting business there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985). These acts must be "such that [a defendant] should reasonably anticipate being haled into court [in the forum State]." *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Further, the court's exercise of jurisdiction must comport with "traditional notions of fair play and substantial justice." *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940). When ascertaining whether personal jurisdiction exists, courts must resolve the question based on the circumstances that the particular case presents. *Burger King*, 471 U.S. at 485, 105 S.Ct. at 2189.

In this case, plaintiffs do not argue that the Court has general jurisdiction over BAT but rather they argue that the Court has specific jurisdiction over BAT due to BAT's contacts with Pennsylvania. In advancing their argument, plaintiffs essentially attempt to demonstrate that BAT has sufficient minimum contacts with Pennsylvania based on (1) BAT's contacts with Pennsylvania and (2) the contacts of its subsidiary, B & W, with Pennsylvania. The Court will first address whether BAT itself possesses the necessary "minimum contacts" with Pennsylvania that would permit this Court to exercise specific personal jurisdiction over it.

The "minimum contacts" prong, for specific jurisdiction purposes, is satisfied by actions, or even a single act, by which the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *See Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. at 2183. The defendant's purposeful availment must be such that it "should reasonably anticipate being haled into court" in the forum state. *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567.

Plaintiffs have failed to allege any facts that would indicate that BAT has even one contact with Pennsylvania. BAT has submitted the affidavit of David Wilson, the Company Secretary of BAT. As evidenced by the Wilson Affidavit, BAT has done nothing which could be deemed "purposeful availment" of the benefits of doing business in Pennsylvania. BAT is an overseas public limited company incorporated under the laws of England and Wales. (Wilson Aff. ¶ 2). BAT "is a holding company that has never manufactured, marketed, packaged, sold, distributed or advertised tobacco products, or any other goods or products, in the State of Pennsylvania or elsewhere." (Wilson Aff. ¶ 3). BAT is not licensed nor qualified to conduct business in Pennsylvania and has never transacted any business within Pennsylvania and maintains no officer, agent, distributor, servant, employee, broker, wholesaler or other representative within Pennsylvania. (Wilson Aff. ¶¶ 6–7). BAT also does not own, lease or possess real or personal property in the state. Further BAT maintains no bank accounts, pays no

taxes, receives no mail, has not entered into contracts, and has no agent for service of process in Pennsylvania. (Wilson Aff. ¶¶ 9–11, 13). BAT's officers, employees, records and office are located in the United Kingdom. In sum, the Court finds that BAT itself does not have one contact with Pennsylvania.

Plaintiffs claim that BAT is directly involved in tobacco research and has established minimum contacts with Pennsylvania through such tobacco research. This claim is not supported by the evidence of record. For example, plaintiffs point to the August 1996 Report of the United States Food & Drug Administration as evidencing BAT's involvement in research. A close review of that document, however, provides no support for plaintiffs' allegations and demonstrates that is was B & W and BATCo, and not BAT, that performed the research referred to throughout the report. In addition, many of the documents make reference to the involvement of "BAT" in tobacco research without specifying whether the reference is to BAT, BATCo or B & W. These documents simply provide no support for plaintiffs' position. Plaintiffs provide no further documentary evidence that BAT was ever involved in research. As such, the Court cannot find that BAT has established minimum contacts with Pennsylvania through tobacco research which plaintiffs cannot prove that BAT ever performed.

Realizing the difficulty in establishing a *prima facie* case of jurisdiction over BAT based on BAT's own activities, plaintiffs direct the Court's attention to the contacts of BAT's subsidiary, B & W, with Pennsylvania. Pointing to the contacts of B & W, plaintiffs argue that this Court can properly exercise specific jurisdiction over BAT because B & W's contacts can be properly imputed to BAT.

The law is presently unclear as to when a court may properly impute the contacts of a subsidiary to the parent corporation for the purpose of establishing personal jurisdiction over the parent. In *Gallagher v. Mazda Motor of America, Inc.*, 781 F.Supp. 1079 (E.D.Pa.1992), Judge Cahn (now Chief Judge), in an attempt to provide some guidance in this murky area of personal jurisdiction, set forth the three lines of cases dealing with when imputing jurisdictional contacts is proper. The first line of cases grows out of the Supreme Court's decision in *Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 335–37, 45 S.Ct. 250, 250–52, 69 L.Ed. 634 (1925). The *Cannon* cases hold "that, so long as both the parent and subsidiary corporations observe and respect the corporate form, the jurisdictional contacts of the subsidiary will not be imputed to the parent." *Gallagher*, 781 F.Supp. at 1083 (citations omitted). This is the most restrictive form of "parent/subsidiary" jurisdiction.

The second and third line of cases establish a lower threshold for imputing the jurisdictional contacts of a subsidiary to the parent corporation.[6] *Id.* at 1084. The second line of cases "hold that contacts should be imputed when the parent corporation exercises total control over the affairs and activities of the subsidiary, and can therefore be said to be the subsidiary's alter ego." *Id.* (citations omitted). The final line of cases "holds that contacts should be imputed when the subsidiary was either established for, or is engaged in, activities that, but for the existence of the subsidiary, the parent would have to undertake itself." *Id.* (citing *Mirrow v. Club Med, Inc.*, 118 F.R.D. 418, 419–20 (E.D.Pa.1986)). Judge Cahn, after carefully considering these cases, adopted that third line of cases as the correct view. *Id.* at 1085.

Judge Cahn noted that the Court's "inquiry into whether the subsidiary is simply a substitute for the parent is ... a pragmatic one." *Id.* at 1085 n. 10. Indeed, "a party is

---

**6.** In *Gallagher*, Judge Cahn noted that the second and third line of cases have rejected the strict "presence" requirement of *Cannon*. *Gallagher*, 781 F.Supp. at 1084 n. 9. These cases reach this conclusion by reasoning that when the Supreme Court abandoned the "presence" requirement of *Pennoyer v. Neff*, 95 U.S. 714, 725–27, 24 L.Ed. 565 (1877), and adopted the liberal "minimum

contacts" of *International Shoe v. Washington*, 326 U.S. 310, 316–17, 66 S.Ct. 154, 158–59, 90 L.Ed. 95 (1945), the Supreme Court must have also abandoned the "presence" requirement of *Cannon*. This Court agrees, as did Judge Cahn, that the Supreme Court's decision in *International Shoe* signified the Court's departure from the strict "presence" requirement of *Cannon*.

free to argue that the factors favored by the second line of cases, such as the overlap between members of the board of the subsidiary and the parent, are some evidence that the subsidiary is engaged in activities that the parent would otherwise perform." *Id.* To the extent that a party argues the elements of the second line of cases, there is a blurring of boundaries between the second and third tests.

This combining of elements from the different tests demonstrates the inherent difficulty in attempting to categorize the parent/subsidiary line of cases into discreet and separate tests and then trying to select one test to apply to all cases—cases which will almost invariably have distinct and varied facts. For example, the *Gallagher* court stated that the third test was the correct test. Under this third test, it would appear that a court could never impute the contacts of a subsidiary to a holding company. In *Gallagher*, the court stated that courts can exercise personal jurisdiction over "a parent [which] uses a subsidiary to do what it otherwise would have done itself. . . ." *Id.* at 1085. The *Gallagher* court explained that in the case of a holding company, "the subsidiary is not performing a function that the parent would otherwise have had to perform itself (the holding company could simply hold another type of subsidiary). In such a case, imputing jurisdictional contacts would be improper." *Id.* (citations omitted). Under the *Gallagher* test, it appears that a court could never impute the jurisdictional contacts of the subsidiary to the parent holding company, even if the holding company dominated the subsidiary to such an extent that the subsidiary was the mere alter ego of the parent. The Court submits that this result would be incorrect as a matter of jurisdictional law.

■ Instead of applying one rigid test in lieu of all the other tests, this Court believes that it should examine all relevant factors that relate to the intimacy of the relationship between the parent and subsidiary to assess whether the contacts of the subsidiary with a particular state should be imputed to the parent. Under this test the court is free to examine all relevant factors such as whether the subsidiary corporation played any part in the transactions at issue, whether the subsidiary was merely the alter ego or agent of the parent (this factor perforce incorporates all the factors that have been historically used in determining whether a subsidiary is the alter ego or agent of the parent), whether the independence of the separate corporate entities was disregarded, and whether the subsidiary is necessarily performing activities that the parent would otherwise would have to perform in the absence of the subsidiary.[7] *See Lucas v. Gulf & Western Indus., Inc.,* 666 F.2d 800, 805–806 (3d Cir.1981); *Gallagher,* 781 F.Supp. at 1085. Applying this test to the facts of the case, the Court finds that the contacts of BAT's subsidiary, B & W, cannot be properly imputed to BAT.

To begin, the Court finds that BAT does not dominate or control B & W to an extent that would permit the Court to treat B & W as the alter ego of BAT. In its memorandum, plaintiffs baldly claim that BAT "originates, implements, directs, controls, manages, supervises and polices its tobacco operations on a day-to-day basis. . . ." (Pls.' Mem. at 10). Based on this alleged activity, plaintiffs claim that B & W is the mere alter ego of BAT and as such B & W's contacts can be imputed to BAT. A review, however, of the jurisdictional documents and an analysis of the case law demonstrates that plaintiffs' contentions are flawed.

■ " 'The degree of control exercised by the parent must be greater than normally associated with common ownership and directorship.' " *Savin Corp. v. Heritage Copy Prods., Inc.,* 661 F.Supp. 463, 469 (M.D.Pa. 1987) (quoting *Hargrave v. Fibreboard Corp.,* 710 F.2d 1154, 1160 (5th Cir.1983)). To establish an alter-ego relationship, plaintiffs must prove that BAT controls the day-to-day operations of B & W such that B & W can be said to be a mere department of BAT. *See id.*

---

7. This list of factors in not in any respect meant to be an all-inclusive list of factors that should be examined in determining the imputation of subsidiary contacts. Courts should be permitted to examine any factor that is relevant to the jurisdictional inquiry before it, and what factors the court will examine depends on the particular circumstances of the case before it.

A review of the documents and affidavits demonstrates that the relationship between BAT and B & W is that of an ordinary holding company/subsidiary relationship, not one of undue domination and control.

In support of their position, plaintiffs attach the Affidavit of Professor Robert B. Stobaugh, Charles E. Wilson Professor of Business Administration, Emeritus, at the Harvard University Graduate School of Business Administration and one of the nation's foremost experts on corporate governance. In sum, Professor Stobaugh's conclusion, based on the very exhibits submitted by plaintiffs, is that BAT does not exert undue influence and control over its subsidiaries. Professor Stobaugh opines that the degree of influence exercised by BAT over its indirect, wholly owned subsidiary B & W is entirely reasonable and appropriate for the holding company/subsidiary relationship. The Court agrees with Professor Stobaugh's assessment.

The following facts demonstrate that BAT has maintained a normal holding company/subsidiary relationship with B & W. The David Wilson Reply Affidavit makes clear that the separate corporate structures of BAT and B & W have been maintained. Wilson states that "[BAT] and B & W have operated as separate and distinct corporate entities and have scrupulously maintained all corporate formalities—each has its own offices, employees, directors and officers, and each maintains separate accounts, records and minutes." (Wilson Reply Aff. ¶ 11). Plaintiffs argue that the separateness of these two entities is in question because in 1992 a member of BAT's Board of Directors sat as Chairman of B & W's Board of Directors and as Chairman of the B & W Executive Committee. This sole allegation is simply insufficient to impute the contacts of B & W to BAT, because overlapping directors and officers do not alone establish an alter ego relationship. *See Poe v. Babcock Int'l, plc.,* 662 F.Supp. 4, 6 (M.D.Pa.1985) (refusing to apply alter ego theory of jurisdiction where there are several overlapping directors stating that "[w]here a parent company constitutes one hundred percent of the stockholders of the subsidiary, it is to be expected that there will be directors which are common to the boards of both"). Moreover, the overlap between BAT and B & W has been minimal over the years and at the present time no individual sits on both boards. Thus, the Court finds that the corporate separateness of BAT and B & W has been maintained.

BAT has also produced other evidence which demonstrates that BAT and B & W maintain a reasonable and normal parent/subsidiary relationship. BAT's Statement of Business Conduct, dated December 21, 1993, states that it "does not purport to lay down detailed rules concerning all topics which it covers. These will be for individual Operating Group Companies to determine locally in light of their own circumstances and their business environment." (Pls.' Ex. 24). This Statement additionally provides that "[i]t is the responsibility of each Operating Group Board when setting standards to meet its own individual circumstances to adopt criteria of business conduct no less rigorous than those contained in this Statement. . . ." (Pls.' Ex. 24). This Statement along with numerous other documents, cited by BAT and available to plaintiffs, explicitly demonstrates that BAT provides its subsidiaries with substantial autonomy.

Additional evidence with respect to the activities of B & W demonstrates that B & W is a highly autonomous entity. During the period examined by Professor Stobaugh, "B & W was responsible for managing its own productions units, product testing, quality control, blend modifications, and other such operations." (Stobaugh Aff. ¶ 21). B & W also prepared its own plans, estimates, and performance results. Importantly, lending between BAT and B & W "was done on an arm's length basis, with each of [BAT's] subsidiaries maintaining responsibility for its own debt service." (Stobaugh Aff. ¶ 34). Charges for goods and services between BAT and its subsidiaries are also at prices applicable to arm's length transactions.[8] It

---

8. The documents produced also indicate that BAT is a relatively small company (under 200 employees) when compared to the size of the entire BAT Group (200,000 employees). This

is obvious from a review of these documents that B & W is an autonomous subsidiary involved in the business of manufacturing and selling cigarettes, not BAT. All of these findings lead the Court to conclude that BAT does not exert undue influence and control over B & W.

Plaintiffs further argue that BAT exercises direct domination and control over B & W through the Tobacco Strategy Review Team ("TSRT"). This claim is not supported by any of the jurisdictional documents that have been produced in this case. As evidenced by the documents, the TSRT is not even a BAT entity—it is a group consisting of the senior executives from several tobacco operating companies and members of the board of directors of the parent company. Furthermore, the TSRT previously met only once or twice a year, and later on a quarterly basis. It is highly unlikely that a group that meets so infrequently could dominate the day-to-day operations of a company as large as B & W—a company for which thousands of decisions need to be made on a daily basis.

The documents reflect that the basic purpose of the TSRT was not to exercise domination of the operating companies by the parent company. Instead, the TSRT was created to fulfill two goals of a holding company: (1) transferring knowledge to a subsidiary from the holding company, to the holding company from a subsidiary, and between subsidiaries and (2) improving coordination among the different subsidiaries. *See* (Stobaugh Aff. ¶ 41). As established by the Stobaugh Affidavit, and not refuted by plaintiffs, such influence is consistent with a typical holding company/subsidiary relationship. (Stobaugh Aff. ¶ 17). Based on the documents reviewed, the Court finds that BAT does not exercise undue control and influence over B & W through the TSRT. Instead, BAT uses the TSRT merely to exercise only that amount of influence which is generally exercised by a holding company over its subsidiaries.

■ Plaintiffs also fail to include the requisite allegations or proof that BAT and B &

W use its corporate structure for fraudulent, unjust or inequitable purposes. In *Reverse Vending Assoc. v. Tomra Sys. US, Inc.,* 655 F.Supp. 1122, 1128 (E.D.Pa.1987), the court stated that "the corporate entity should be upheld unless specific, unusual circumstances call for an exception." The *Reverse* court explained that:

> the application of the alter ego theory to pierce the corporate veil is a "tool of equity ... appropriately utilized 'when the court must prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime.' "

*Id.* (citing *Publicker Indus., Inc. v. Roman Ceramics Corp.,* 603 F.2d 1065, 1069 (3d Cir.1979)). The piercing of the corporate veil is permitted in these situations because the parent has used the "the limited liability inherent in the corporation's separate existence ... as a means or intermediary for the perpetration of fraud, illegality or injustice." *Id.* (citations omitted).

In an attempt to pierce the corporate veil, plaintiffs argue that BAT has conducted business in Pennsylvania by profiteering from cigarette sales and passing profits through B & W to BAT, with the result being that B & W may be insolvent. (Pls.' Mem. at 7–8). Thus, plaintiffs impliedly suggest that BAT created B & W to shield itself from potential tobacco litigation liability and yet still benefit from the enormous profits that cigarettes sales have generated in Pennsylvania. And in the process of doing so, BAT has left B & W insolvent—the company which is potentially liable to plaintiffs.

Plaintiffs' argument that B & W is insolvent is not supported by the evidence of record. Indeed, plaintiffs merely suggest that B & W "may be insolvent." This claim, however, is directly refuted by the Wilson Reply Affidavit which explicitly represents that B & W is not and has never been insolvent—to the contrary, B & W is represented to be a highly profitable business. (Wilson Reply Aff. ¶ 15). Thus, there simply

---

disparity in size is a strong indicator of the inability of BAT to exert undue control over its subsidiaries. It would be virtually impossible for

the BAT employees to control the day-to-day operations of its numerous subsidiaries.

does not exist any evidence to support plaintiffs' implicit theory that B & W is being drained of profits by BAT, and thus left insolvent to the detriment of tobacco smokers who have brought or may bring suit against B & W.

■ Moreover, the possibility that a plaintiff may have difficulty enforcing a judgment against a defendant is not enough to justify piercing the corporate veil. *Skidmore, Owings & Merrill v. Canada Life Assurance Co.*, 907 F.2d 1026, 1028 (10th Cir. 1990). Courts do not pierce the corporate veil unless the "corporation is so undercapitalized that it is unable to meet debts that may be reasonably be expected to arise in the normal course of business." *Laborers Clean–Up Contract Admin. Trust Fund v. Uriarte Clean–Up Serv., Inc.*, 736 F.2d 516, 525 (9th Cir.1984); *see also Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1522 (3d Cir.1994) (refusing to pierce corporate veil, noting that sole shareholder had right to draw profits from profitable company were corporate formalities were generally observed). In this case, there is simply no evidence that B & W is so undercapitalized that it is unable to meet debts that may be expected to arise in the normal course of business; indeed, the evidence is to the contrary. Thus, the Court refuses to pierce the corporate veil between B & W and BAT under the circumstances of this case.[9]

■ Plaintiffs' assertion that this Court should impute the contacts of B & W to BAT because B & W undertakes activities in Pennsylvania that BAT would have to undertake if not for B & W is misplaced. As stated previously, the contacts of the subsidiary corporation may be imputed to the parent when the subsidiary is engaged in activities "that, but for the existence of the subsidiary, the parent would have to undertake." *Gallagher*, 781 F.Supp. at 1085. However, in the case of a holding company such as BAT, "the subsidiary is not performing a function that the parent would otherwise have had to perform itself (the holding company simply could hold another type of subsidiary). In such a case, imputing jurisdictional contacts would be improper." *See id.* Here, the imputation of B & W's contacts, under this theory, would be improper because B & W is not engaged in a business that BAT would necessarily have to undertake if B & W did not exist. B & W's business is the manufacture, marketing, sale, and distribution of cigarettes; whereas, the business of BAT is the business of investment. Thus, it is clear that BAT would not have to undertake the activities of B & W in the absence of B & W.

Plaintiffs implicitly argue that BAT is the successor to BATCo, and as such, BAT should be liable under the theory of corporate successor liability. Defendants explicitly contend that as a matter of law, BAT could not have succeeded to the liabilities of BATCo because the requirements for imposing corporate successor liability have not been satisfied. The Court agrees with BAT's position.

■ As a matter of law, a corporation succeeds to the liabilities of another corporation only in certain limited instances. One such instance is where two or more corporations combine through a merger or consolidation and the corporation or corporations that are merged cease to exist. Under these circumstances, the surviving corporation becomes liable for all of the obligations of the constituent corporations, even those liabilities which are contingent. *See Generally* 8 Zolman Cavitch, *Business Organizations* § 161.02[2] (1994).[10] By contrast, where a

---

9. Plaintiffs further contend that B & W may be insolvent due to the debt BAT acquired when it purchased the Farmer's Group insurance business. This contention is not supported by the documentary evidence. It was Batus Holdings that acquired Farmer's in 1988, and the debt was moved to Batus Tobacco Services, Inc., the parent company of B & W, in 1990. Thus, neither BAT nor B & W directly own Farmer's or acquired the debt from this purchase.

10. Under Pennsylvania law, a company who purchases or receives all of the assets of another company can become liable for the debts or liabilities of the transferor company under certain limited circumstances. *Stolp v. Sollas Corp.*, No. CIV.A.96–0723, 1997 WL 83750, at *6 (E.D.Pa. Feb.21, 1997). This theory of corporate successor liability is inapplicable to this motion because BAT did not purchase the assets of B & W.

corporation acquires the stock of another corporation and the target corporation continues to operate as a separate corporate entity, the purchaser corporation does not thereby assume the liabilities of the acquired corporation unless it does so expressly. *Id.* § 161.02[1]. *See also Roy v. Bolens Corp.,* 629 F.Supp. 1070, 1073 (D.Mass.1986) (the successor liability doctrine has no applicability where, "the original manufacturer remains in existence to respond in tort for its alleged negligence and breach of warranty").

▪ The facts of this case do not support plaintiffs' implied theory of corporate successor liability. In 1976, BAT became the separate and indirect parent company of both BATCo and B & W. In 1976, BAT brought all of the stock of BATCo, not its assets. (Wilson Reply Aff. ¶ 6). Importantly, at the time of this stock purchase, BAT did not assume any of liabilities that BATCo potentially had. Further, BATCo has been in existence since 1902 and continues to exist today as a separate legal entity from BAT, despite the 1976 stock purchase by BAT. Thus, BATCo remains in existence today to respond to any potential litigation brought against it.[11] Plaintiffs' implied theory of corporate successor liability must fail because no evidence has been produced which would support this theory.

Accordingly, for the foregoing reasons, the Court grants BAT's motion to dismiss plaintiffs' first amended complaint for lack of personal jurisdiction. Plaintiffs have failed to satisfy their burden of establishing a *prima facie* case of personal jurisdiction over BAT.

### B. Motion to Quash and for Entry of a Protective Order

BAT has also moved to quash plaintiffs' discovery requests and for entry of a protective order until resolution of BAT's motion to dismiss for lack of personal jurisdiction. Since the Court has granted BAT's motion to dismiss for lack of personal jurisdiction, the Court should simply deny BAT's motion as moot.

Plaintiffs respond that this Court should deny BAT's motion to quash and entry for a protective order to the extent that they be permitted to conduct discovery into jurisdictional facts. *See Renner v. Lanard Toys Ltd.,* 33 F.3d 277, 283 (3d Cir.1994). Plaintiffs also request that the Court defer ruling or deny BAT's motion to dismiss until they have had the opportunity to conduct jurisdictional discovery.

▪ A trial court has discretion to refuse to grant jurisdiction discovery. *Rose v. Granite City Police Dep't,* 813 F.Supp. 319, 321 (E.D.Pa.1993); *Poe,* 662 F.Supp. at 7. A court may deny jurisdictional discovery where the plaintiff has failed to meet its burden of making out a threshold *prima facie* case of personal jurisdiction. *Rose,* 813 F.Supp. at 321. As stated by the United States District Court for the Northern District of Florida:

> the plaintiff asks that rather than dismissing the case, [the court] allow limited discovery in hopes that it might uncover some evidence supporting jurisdiction. That is not the purpose of discovery. When the defendant is required only to present a prima facie case, discovery is not appropriate.

*Milligan Elec. Co. v. Hudson Construction Co.,* 886 F.Supp. 845, 850 (N.D.Fla.1995). In this case, plaintiffs have failed to establish a *prima facie* case of personal jurisdiction, thus the Court will exercise its discretion by not allowing plaintiffs to conduct limited discovery in the hopes that it may uncover some evidence supporting jurisdiction; discovery should not be used as a fishing expedition.

While Pennsylvania courts will grant jurisdictional discovery in cases where the plaintiff has had no opportunity to discover facts essential to the jurisdictional inquiry, this is obviously not such a case. Plaintiffs' counsel, as members of the *Castano* Plaintiffs' Legal Committee, already have had access to more than 13,000 pages of jurisdictional documents produced by BAT in other jurisdictions relat-

---

11. The Court also notes that plaintiffs' motion to add BATCo as a party defendant is entirely inconsistent with any suggestion that BAT is the corporate successor to BATCo. By moving to add BATCo as a defendant, plaintiffs impliedly admit that BAT and BATCo are separate and distinct corporations.

ing to BAT's contacts with the entire United States, including Pennsylvania. Indeed, plaintiffs admit that they have had access to these documents by using many of these documents as exhibits to their opposition papers. Plaintiffs failure to make out even a *prima facie* case of personal jurisdiction is even more glaring in light of the fact that plaintiffs have had access to these documents. Under these circumstances, it would be inappropriate for this Court to subject BAT to burdensome and redundant discovery.

Thus, the Court denies as moot plaintiffs' motion to quash and for entry of a protective order, BAT having been dismissed from this action for lack of personal jurisdiction and plaintiffs having failed to demonstrate that limited discovery is warranted.

### C. Plaintiffs' Motion to Join BATCo

Plaintiffs have filed a motion to add BAT-Co as a party defendant under Rule 21 of the Federal Rules of Civil Procedure. Plaintiffs contend that research has demonstrated that BATCo is involved in the wrongful actions alleged in plaintiffs' first amended complaint, and as such, BATCo should be added as a party defendant in this action. No responses have been filed in opposition to this motion.

Federal Rule of Civil Procedure 21 gives this Court discretion to add parties "at any stage of the action and on such terms as are just." *See National Union Fire Ins. Co. of Pittsburgh, Pa. v. Massachusetts Mun. Wholesale Elec. Co.*, 117 F.R.D. 321, 322 (D.Mass.1987) ("Rule 21 gives the trial court discretion to drop or add parties at any stage of an action and upon such terms as are just."). The Court will exercise its discretion to grant plaintiffs leave to add BATCo as a party defendant.

### III. Conclusion

Accordingly, for the foregoing reasons, the Court grants BAT's Motion to Dismiss the First Amended Complaint for Lack of Personal Jurisdiction and plaintiffs' Rule 21 Motion to Add Batco as a Party Defendant. Also the Court denies as moot BAT's Motion to Quash and for Entry of a Protective Or-

der, the Court having dismissed plaintiffs' first amended complaint as against BAT.

An appropriate Order follows.

### ORDER

AND NOW, this day of June, 1997, upon consideration of the following Motions, and any responses thereto, it is hereby ORDERED as follows:

1. The Motion of Defendant B.A.T. Industries p.l.c. to Dismiss the First Amended Complaint for Lack of Personal Jurisdiction is GRANTED;

2. The Motion to Quash and for Entry of a Protective Order of Defendant B.A.T. Industries p.l.c. is DENIED as moot; and

3. Plaintiffs' Rule 21 Motion to Add the British American Tobacco Company as a Defendant is GRANTED.

AND IT IS SO ORDERED.