**NORTHEASTERN POWER COMPANY, d/b/a NEPCO Services Co., Plaintiff,**

v.

**BALCKE–DURR, INC., d/b/a Balcke–Durr Heat Exchanger Div., Bdag Balcke–Durr Ag, and Balcke–Durr GmbH, Defendants.**

**No. CIV. A. 97–CV–4836.**

United States District Court, E.D. Pennsylvania.

April 30, 1999.

George M. VonMehren, Jill G. Okun, Cleveland, OH, Thomas J. Maloney, Bethlehem, PA, for plaintiff.

Walter Weir, Jr., Philadelphia, PA, Timothy N. Toler, Atlanta, GA, for defendants.

## OPINION and ORDER

VAN ANTWERPEN, District Judge.

Presently before the Court is a Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(2) filed by Defendant BDAG Balcke–Durr AG ("BDAG") against Plaintiff Northeastern Power Company ("NEPCO").

## I. INTRODUCTION

NEPCO filed its Complaint on July 28, 1997 against Balcke–Durr, Inc. ("BDI"). NEPCO filed its Amended Complaint on June 5, 1998, amending it against BDAG and Defendant Balcke–Durr BD GmbH ("BD GmbH"). BDAG filed a Motion to Dismiss for lack of personal jurisdiction on July 23, 1998. On August 20, 1998, the Court issued an Order denying BDAG's Motion "for administrative purposes without prejudice to the right of said defendants to reassert or refile this motion when a limited period of discovery has been completed." Order dated August 20, 1998 at ¶ 1. We further stated in the Order that "jurisdiction over BDAG Balcke–Durr AG is questionable." *Id.* at ¶ 4. As discovery has now ended, BDAG filed the instant Motion to Dismiss for lack of personal jurisdiction on March 2, 1999. NEPCO filed its response on March 18, 1999 and BDAG filed a reply on April 2, 1999. For the reasons stated below, BDAG's Motion to Dismiss is Granted.

## II. FACTUAL BACKGROUND

Because the Court is deciding BDAG's Motion to Dismiss, we "must accept all of [NEPCO's] allegations as true and construe disputed facts in favor of [NEPCO]." *See, e.g., Carteret Savs. Bank, FA v. Shushan,* 954 F.2d 141, 142 n. 1 (3d Cir. 1992), *cert. denied,* 506 U.S. 817, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992).

In October 1994, BDAG, a holding company under the laws of the Federal Republic of Germany, transferred all of its assets to its wholly-owned subsidiary, BD GmbH, a German corporation. *See* Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Br.") at 3; Def.'s Br. in Supp. of Mot. to Dismiss ("Def.'s Br.") at 2. Nevertheless, the parent and the subsidiary shared a business address, telephone and facsimile lines and numbers, and e-mail addresses. *See* Pl.'s Br. at 4. In addition, "three of five BDAG Board members sit on BD GmbH's four member board." *Id.*

In June 1995, NEPCO contracted with BDI, an American corporation, for the purchase of an air preheater for its cogeneration facility, which is located in McA-

doo, Pennsylvania. *See id.* at 3; Def.'s Br. at 2. In July 1995, BDI issued a purchase order to BDAG for NEPCO's preheater.[1] *See* Pl.'s Br. at 5. BDAG informed BDI at that time that only BD GmbH could accept such an order. *See id.* Nevertheless, an acknowledgment was issued on a BDAG form and the order was referred to as a "BDAG project." *Id.* NEPCO further avers that correspondence from BD GmbH was often sent on BDAG stationary. *See id.* at 5, 6.

The air preheater allegedly began to experience leakage upon its installation. *See id.* In response to NEPCO's complaints, BDI arranged for Dr. Brasseur ("Brasseur") and Mr. Pfeiffer ("Pfeiffer"), both of whom were employees of BD GmbH,[2] to visit NEPCO's facility in Pennsylvania. *See id.* at 6. All of Brasseur's and Pfeiffer's dealings and communications with NEPCO occurred during their course of employment with BD GmbH. *See* Def.'s Reply Br. at 15–16.

In October 1996, Brasseur visited NEPCO's facility in McAdoo, Pennsylvania to investigate the reported leaks in the preheater assembly.[3] *See* Pl.'s Br. at 5; Def.'s Reply Br. at 16. This was Brasseur's only visit to NEPCO's facility in Pennsylvania. *See* Def.'s Reply Br. at 16. Although at that point Brasseur had been an employee of BD GmbH for over a year, his business card still showed him as a BDAG employee. *See* Pl.'s Br. at 5–6. While NEPCO asserts that this is proof that, in substance, BDAG and BD GmbH were really the same entity, *see id.* at 6, BDAG maintains that it was simply a case of a former employee using a yet-to-be exhausted set of business cards. *See* Def.'s Reply Br. at 16. As a result of this visit, Brasseur submitted a report, dated February 21, 1997, stating that the air preheater was in "very good shape." *See* Pl.'s Br. at Exh. 11–B.

## III. DISCUSSION

■ "Once a jurisdictional defense has been properly raised, 'the plaintiff bears the burden of demonstrating contacts with the forum state sufficient to give the court in personam jurisdiction.'" *Supra Med. Corp. v. McGonigle,* 955 F.Supp. 374, 381 (E.D.Pa.1997) (quoting *Time Share Vacation v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 63 (3d Cir.1984)). After the plaintiff produces these "facts sufficient to establish personal jurisdiction by a preponderance of the evidence, the burden then shifts to the defendant to show an absence of fairness or lack of substantial justice in exercising jurisdiction." *Id.* In determining whether personal jurisdiction can be asserted over a nonresident defendant, a court must proceed through "specific analytical steps." *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.,* 149 F.3d 197, 199 (3d Cir.1998). We begin by considering Fed. R.Civ.P. 4(e), which "authorizes personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits." *Id.* (citing *Mellon Bank (East) PSFS, Nat'l Assoc. v. Farino,* 960 F.2d 1217, 1221 (3d Cir.1992)). Pennsylvania's long-arm statute, which is codified at 42 Pa.C.S.A. § 5322, "permits Pennsylvania courts to exercise personal jurisdiction over nonresident defendants 'to the constitutional limits of the [D]ue [P]rocess [C]lause of the [F]ourteenth [A]mendment.'" *Id.* Therefore, our "exercise of personal jurisdiction pursuant to Pennsylvania's long-arm statute is . . . valid as long as it is constitutional." *Id.*

---

1. Specifically, BDAG states in its Brief that BDI contracted with BD GmbH for the "plate stacks," which are significant components of the preheater. *See* Def.'s Br. at 2.

2. As a result of the October 1994 asset transfer and a subsequent employee transfer in June 1995, Brasseur and Pfeiffer went from being employees of BDAG to employees of BD GmbH. *See* Def.'s Reply Br. in Supp. of Mot. to Dismiss ("Def.'s Reply Br.") at 15.

3. Pfeiffer's one and only visit to NEPCO's facility in McAdoo, Pennsylvania occurred in May 1997. *See* Def.'s Reply Br. at 16.

■ The Court must next determine whether the defendant's contacts with the forum state are sufficient to invoke general personal jurisdiction. *See Farino,* 960 F.2d at 1221. In order to establish general jurisdiction, a nonresident's contacts with the forum must be "continuous and substantial." *Pennzoil,* 149 F.3d at 200. However, because neither party contends that there is a sufficient basis for this Court to exercise general personal jurisdiction, we will limit our remaining analysis to whether the alternative form of jurisdiction is present: specific personal jurisdiction. Specific jurisdiction exists when the plaintiff's claim " 'is related to or arises out of the defendant's contacts with the forum.' " *Farino,* 960 F.2d at 1221 (quoting *Dollar Savs. Bank v. First Sec. Bank of Utah, N.A.,* 746 F.2d 208, 211 (3d Cir.1984)).

■■ There are two standards courts generally apply when determining specific jurisdiction. The purpose of these standards is "to ensure that defendants receive due process as required by the Fourteenth Amendment." *Pennzoil,* 149 F.3d at 200. Pursuant to the first standard,[4] "a court must determine whether the defendant had the minimum contacts with the forum necessary for the defendant to have 'reasonably anticipate[d] being haled into court there.' " *Id.* (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). Under the second standard,[5] and assuming minimum contacts have been established, a court may inquire whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)(quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

In the case at bar, NEPCO contends that "the actions of the individuals who traveled to Pennsylvania and committed fraud and/or negligence, and perpetuated these torts from Germany by sending documents into Pennsylvania are properly attributable to BDAG and sufficient to confer jurisdiction." Pl.'s Br. at 2. Although Brasseur and Pfeiffer were employees of BD GmbH at the time of their dealings with NEPCO, NEPCO argues that BDAG is also within the jurisdiction of the Court for two reasons. First, NEPCO asserts that BD GmbH, through the acts of Brasseur and Pfeiffer, acted as the apparent agent of BDAG, thereby invoking BDAG's liability in this suit. *See id.* at 9–12. Second, NEPCO maintains that the 1994 asset transfer from BDAG to BD GmbH created a distinction without a difference because the companies were, in essence, one in the same. *See id.* at 12–15. Therefore, NEPCO contends that both BDAG and BD GmbH are responsible for the acts of Brasseur and Pfeiffer, and both companies are within the jurisdiction of this Court. *See id.*

### A. Pennsylvania's Long–Arm Statute

The applicable provisions of Pennsylvania's long-arm statute are 42 Pa.C.S.A. § 5322(a)(3) and (4). Section 5322(a)(3) provides that jurisdiction extends to tortfeasors who cause injury in the state by acts or omissions within the state. Section 5322(a)(4) states that personal jurisdiction extends to any person who "[c]aus[es] harm or tortious injury in th[e] Commonwealth by an act or omission outside th[e] Commonwealth." NEPCO alleges that it suffered injury due to the acts of BDAG and BD GmbH through its agents Brasseur and Pfeiffer, and also that the injury occurred in Pennsylvania.[6] Some or all of

4. This standard is mandatory in the specific jurisdiction determination.

5. The second standard is discretionary. However, most courts analyze and consider its effect on the personal jurisdiction determination. *See, e.g., Mesalic v. Fiberfloat Corp.,*

897 F.2d 696, 701–02 (3d Cir.1990). We also choose to include it in our analysis.

6. In *Carty v. Beech Aircraft Corp.,* 679 F.2d 1051, 1065 (3d Cir.1982), the court held that "when a commercial entity sues for tortious

the damage to NEPCO's air preheater is allegedly the result of Brasseur's and Pfeiffer's fraudulent and/or negligent representations to NEPCO. Because the air preheater is located at NEPCO's McAdoo, Pennsylvania facility, that is where—for jurisdictional purposes—we must conclude the injury occurred. *See Pennzoil,* 149 F.3d at 202. Therefore, the Court initially concludes that Pennsylvania's long-arm statute extends personal jurisdiction to BDAG.

### B. "Minimum Contacts"

Despite the above finding, "we must still determine whether the strictures of constitutional due process (i.e., minimum contacts and notions of 'fair play and substantial justice') would be observed by asserting jurisdiction." *Id.* The issue of minimum contacts is fact-sensitive and its analysis focuses on the "quality and nature of a defendant's activity [in relation to the forum state]." *Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290, 298 (3d Cir.1985) (citation omitted); *see also Farino,* 960 F.2d at 1224–25 ("[Q]uestions of personal jurisdiction do not lend themselves to categorical determinations"). Although there exist no bright-line rules to assist courts in making this determination, prior cases have produced some basic precepts. For example, the court in *Max Daetwyler* held that the minimum contacts requirement is not satisfied where a nonresident defendant's contact with the forum is simply "fortuitous" or "the result of a single transaction." 762 F.2d at 295. Moreover, with regard to producers or sellers of goods, "the mere foreseeability that a product one sells may end up in the forum state" does not subject the seller to the forum state's jurisdiction. *Renner v. Lanard Toys Ltd.,* 33 F.3d 277, 279 (3d Cir.1994). In essence, a finding of minimum contacts demands the demonstration of " 'some act by which the defendant pur-

posely avail[ed] itself of the privilege of conducting business within the forum State, thus invoking the protection and benefits of its laws.' " *Farino,* 960 F.2d at 1221 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).

■ In reviewing both the quality and nature of BDAG's acts as they are spelled out in the record, the Court is simply unable to find that BDAG "purposely availed itself of the privilege of conducting business" within this State. It is true that BDAG and BD GmbH shared such things as office space, telephone and facsimile lines, and even Directors. The Court is also cognizant of the fact that Brasseur and Pfeiffer sometimes exchanged correspondence with BDI and NEPCO via forms containing BDAG letterhead. However, the fact remains that BDAG and BD GmbH have been separate business entities since October 1994. Moreover, BDAG is a German holding company with its only business location in Germany. Aside from this litigation, BDAG has no contacts with the State of Pennsylvania. Finally, Brasseur and Pfeiffer were at all times relevant to this litigation employees of BD GmbH. Therefore, we conclude that BDAG's "contacts" with Pennsylvania are far too slight to justify this Court's exercise of personal jurisdiction over it. NEPCO's cause of action is more properly directed at BD GmbH.

### C. "Fair Play and Substantial Justice"

■ Even if the Court were to hold that BDAG met the "minimum contacts" test, we would nonetheless conclude that exercising jurisdiction would fail to comport with notions of "fair play and substantial justice." "[E]ven if a defendant has the requisite minimum contacts with the forum state, other factors may militate against exercising jurisdiction." *Pennzoil,*

injury to its physical property, the 'injury' takes place for jurisdictional purposes where

the property has been damaged."

149 F.3d at 205. These factors, often called "fairness factors," include:

(1) the burden on the defendant;

(2) the forum State's interest in adjudicating the dispute;

(3) the plaintiff's interest in obtaining convenient and effective relief;

(4) the interstate judicial system's interest in obtaining the most effective resolution of controversies; and

(5) the shared interest of the several States in furthering fundamental substantive social policies.

*Rudzewicz,* 471 U.S. at 477, 105 S.Ct. 2174.

An analysis of the above factors supports the determination that notions of "fair play and substantial justice" would be violated by having BDAG defend itself in a Pennsylvania forum. The first factor, whether BDAG would be burdened by being forced to litigate this dispute in Pennsylvania, weighs heavily in favor of BDAG. It is clear that forcing BDAG, a German holding company with its only business location in Germany, to defend itself in this suit in the Eastern District of Pennsylvania would be a substantial burden to the company. In fact, the Supreme Court has stated that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano County,* 480 U.S. 102, 114, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). The second factor weighs in favor of NEPCO because Pennsylvania has a strong interest in adjudicating disputes where the injury occurs within its borders. The Court believes that the third factor favors BDAG because, although NEPCO desires convenient and effective relief, the facts show that this relief should come at the expense of, if anyone, BD GmbH. Next, the Court finds that the fourth factor weighs in BDAG's favor because, given the particular facts of this case, we believe that the most effective resolution of this case will occur without the participation of BDAG as a defendant. Finally, the fifth factor also favors BDAG. According to *Asahi,* this factor requires the "court to consider the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction by the [forum] court." 480 U.S. at 115, 107 S.Ct. 1026. Notably, the Court stated: "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Id.* at 115, 107 S.Ct. 1026 (quoting *United States v. First Nat'l City Bank,* 379 U.S. 378, 404, 85 S.Ct. 528, 13 L.Ed.2d 365 (1965)). Therefore, the Court finds that four of the five factors in *Rudzewicz* weigh in favor of dismissing BDAG from this suit.

### 1. NEPCO's Apparent Agency Argument

NEPCO argues that the "fair play and substantial justice" test weighs in its favor because BD GmbH acted as the apparent agent of BDAG. This argument, however, is unpersuasive. In *Johnson v. Summa Corp.,* 632 F.Supp. 122, 125–26 (E.D.Pa.1985), the court discussed how Pennsylvania looks at the apparent agency issue and stated:

The test for determining whether "an agent possesses apparent authority is whether 'a man of ordinary prudence, diligence and discretion would have a right to believe that the agent possessed the authority he purported to exercise.'" *Universal Computer Sys., Inc. v. Medical Servs. Ass'n,* 628 F.2d 820, 823 (3d Cir.1980) (quoting *Apex Fin. Corp. v. Decker,* 245 Pa.Super. 439, 369 A.2d 483, 485–86 (1976)).

In determining whether the reasonable man would have the right to believe in the existence of an agency relationship, the proper focus is on the conduct of the alleged principal and not the agent. *William B. Tanner Co. v. WIOO, Inc.,* 528 F.2d 262, 266 (3d Cir.1975); *Revere Press, Inc. v. Blumberg,* 431 Pa. 370, 246 A.2d 407, 410 (1968).

In the case at bar, there has been no evidence presented by NEPCO which would lead the court to conclude that BDAG acted in such a way as to lead NEPCO to believe that it was engaged in a principal-agent relationship with BD GmbH. Hence, this argument in support of the Court exercising personal jurisdiction over BDAG must fail.

Even if we were to find the existence of an apparent agency relationship, NEPCO has failed to produce evidence showing that it relied upon such a relationship. Hence, because reliance is one of the three elements necessary to sustain a claim under this theory, *see, e.g., Drexel v. Union Prescription Centers, Inc.,* 582 F.2d 781, 797 (3d Cir.1978), the Court would nonetheless find that the claim could not stand.

### 2. NEPCO's Alter Ego/Lack of Corporate Separateness Argument

▮▮▮ Finally, NEPCO argues that the "fair play and substantial justice" prong of personal jurisdiction weighs in its favor because there was a lack of corporate separateness between BDAG and BD GmbH. NEPCO argues that where there is no corporate separateness, "[t]he contacts of a subsidiary/agent can be imputed to its parent/principal for the purpose of establishing personal jurisdiction over the parent/principal." Pl.'s Br. at 12 (citing *Arch v. American Tobacco Co., Inc.,* 984 F.Supp. 830 (E.D.Pa.1997)). In further support of its argument, NEPCO points to the fact that BDAG wholly owns BD GmbH, BDAG and BD GmbH share three common directors, and the two companies share office space, telephone and facsimile lines, e-mail addresses and office equipment. *See id.* at 14.

The court in *Arch* listed several factors which courts may consider in determining whether an alter-ego relationship exists. Specifically, the court stated:

> Instead of applying one rigid test in lieu of all other tests, this Court believes that it should examine all relevant factors that relate to the intimacy of the relationship to the parent and subsidiary to assess whether the contacts of the subsidiary with a particular state should be imputed to the parent. Under this test the court is free to examine all relevant facts such as whether the subsidiary corporation played any part in the transactions at issue, whether the subsidiary was merely the alter ego or agent of the parent (this factor perforce incorporates all the factors that have been historically used in determining whether a subsidiary is an alter ego or agent of the parent), whether the independence of the separate corporate entities was disregarded, and whether the subsidiary is necessarily performing activities that the parent would otherwise have to perform in the absence of the subsidiary.

984 F.Supp. at 837. Moreover, the *Arch* court stated that "to establish an alter-ego relationship, plaintiffs must prove that [the parent] controls the day-to-day operations of [the subsidiary] such that [the subsidiary] can be said to be a mere department of [the parent]." *Id.*

While NEPCO points out several common aspects to BDAG and BD GmbH, its evidence falls short of showing that the two are, in fact, the same entity. BDAG is principally a holding company organized under the laws of the Republic of Germany. It is the sole shareholder of its wholly-owned subsidiary, BD GmbH. Finally, BDAG and BD GmbH maintain separate corporate records and file separate tax returns. Moreover, NEPCO has produced no evidence showing that BDAG controls the day-to-day operations of BD GmbH. Therefore, the Court finds that the two companies are separate corporate entities and that NEPCO's alter-ego argument lacks merit.

### IV. CONCLUSION

For all of the foregoing reasons, BDAG's Motion to Dismiss Pursuant to

Fed.R.Civ.P. 12(b)(2) is GRANTED. An appropriate Order follows.

### *ORDER*

AND NOW, this 30th day of April, 1999, upon consideration of Defendant BDAG Balcke–Durr AG's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(2) filed on March 2, 1999, and Plaintiff NEPCO's response thereto, it is hereby **ORDERED** that Defendant BDAG's Motion is **GRANTED.**